Thank you, Your Honors. Stephanie Leach of the law firm Snell and Wilmer here on behalf of Appellant Pedro Camacho. I'd like to reserve two minutes for rebuttal, if I may. As Your Honors are aware, today we are here on appeal of the District Court's dismissal of Mr. Camacho's civil rights lawsuit. The issues on appeal are twofold, really. The District Court's dismissal of Mr. Camacho's lawsuit in the face of notice that, one, there was no valid settlement agreement because it had been procured by fraud, or two, even if there was a valid settlement agreement at some point, Mr. Camacho properly revoked it. I'll take each argument in turn. The fact that there was no settlement agreement reached. Under Title VII and the ADEA and the case law surrounding that, you need to have a knowing and voluntary waiver in order to have a valid settlement agreement. When it's alleged to be fraudulently procured, that is not a valid settlement agreement. And Mr. Camacho properly alleged that in his notice of rejection of settlement to the Court. Secondly, there was no signed agreement. And I know that the case law is out there that in order to be valid, an agreement does not need to be signed. I'm aware of that. But it's just further noticed that Mr. Camacho did not assent to the terms of the settlement. And with respect to his ADEA and OWVPA claims, in order to have a valid waiver under those statutes, you need to provide the individual with 21 days to consider whether to sign the agreement and then a 7-day period of revocation. Clearly, that was not done here because he never signed anything in the first place. And so the ---- Kagan. Well, I mean, that might be a good ground to attack the agreement in a separate proceeding, particularly if anybody tried to enforce it against him. Well, I ---- My question is, what about in this proceeding? Well, I think here he never had an opportunity to do that. So at a minimum, his ADEA claims should be still with the district court. The district court was wrong in dismissing those claims because there was never an appropriate settlement as to those claims. The other issue is that the court or Mr. Camacho properly notified the court of his rejection of the settlement. And this kind of follows along the lines of the Mews case that the Second Circuit decided, which is the proper procedure for a court to follow when it's notified of a settlement. Here, the parties ---- Well, to back up a minute, what happened here was the part of the whole story that bothers me the most is that Mr. Camacho was essentially not represented before the district court with regard to his contention of the validity of the settlement, because his lawyer, the lawyer who entered into the settlement, was telling the court that there was a settlement and, in fact, had been discharged by then. Correct. I was going to get to that later on, but if you want me to deal with that now, I'm happy to. And that's why I feel that the hearing was flawed, that the court held a telephonic hearing on the settlement agreement. Mr. Camacho was not represented there at that settlement ---- or at that telephonic hearing. He had ---- the court was on notice and appellees were on notice that Mr. Camacho had at least discharged his attorney, and his attorney had no authority to make any representations on his behalf during that telephonic hearing. And the lawyer, in fact, said the case did settle. He did say that, and he had no authority to say that at that point in time. But he said that his client had agreed to it. And we're not arguing that. He did agree. We're not disputing that. We're not disputing that. So the district court says the client, after agreeing to it, had buyer's remorse, but he's ---- and he may have discharged his counsel after that, but he's still in the district court. And what is wrong with that? Well, quite frankly, under the ADEA and OWBPA, you can have buyer's remorse, and those claims should still be in the district court. You have a 7-day period to revoke any assent to a settlement agreement of your ADEA claims. So ---- And he ---- was the ADEA issue ever even raised with the district court? I don't believe any issue was really raised because Mr. Camacho was not properly represented at that hearing. His counsel said that there was a settlement agreement. He was properly represented the first time around, was he not? He was represented at the mediation where the settlement was entered, yes. And they reached an agreement. They did. And the district court's ruling was unambiguous, wasn't it? Correct. He said, that's it. And the only alternative that he posed was one in which, as often happens in settlements, parties would prefer to have it done by a stip rather than the court's order. But the court's order said it's a drop-dead provision. Isn't that so? Well, you're right. That is what the district court said. But again, and we agree that he did settle the case at the mediation. However, that agreement is not compliant with the ADEA. At a minimum, he has an opportunity to have those claims reinstated because Well, but isn't the problem with the ADEA claim that he didn't, in fact, try to revoke it in seven days, he didn't try to revoke it for 30 days? 30 days. 30 days. That was the first notice to the court. He didn't, he never signed any settlement agreement. So he never had a period for the seven days to begin tolling. Why did he have to sign one in light of the district court's order that said it's going to operate automatically unless the parties enter into a stipulation? Well, I think at that point, that's where the Mews case comes into play. And I think the Mews case is more appropriately addressed that issue. And that's where the district court did not take into consideration the fact that the parties said the case had settled, but the parties did not file a notice of dismissal. And I believe there was still something left to be done on that settlement agreement, namely, in order to be compliant with the ADEA, Mr. Camacho needed to be given a period of 21 days to consider it. He needed to be given seven days to revoke it once he considered it and signed it. And so to me, I don't think that was a complete agreement at the time that the mediation occurred. That's not an enforceable agreement. And so it's your argument, then, that under the ADEA, of course, none of this came out in the district court, but that's because he wasn't there. Under the ADEA, the agreement that they spoke into the dictaphone in the mediator's office couldn't be binding because he had to have 21 days to consider it. Correct. And then he had to have seven days after that. But still, he's so that adds up to 28 days, and he still didn't complain to the judge until after that. You're right. But at that point, that agreement, he never had 21 days to consider that agreement that was entered into at mediation. He was he agreed to it right there on the record. He was never given that 21 days. Usually what happens in the ADEA cases is you agree to settle it, then you set forth a document, a settlement agreement, and you give it to the plaintiff. They have 21 days to consider it. It's all written in there. And then he signs it, and then eight days later, you pay them on it. And in this case, it just didn't work out that way. When he was presented with the agreement, the settlement agreement, he never signed anything. At that point, they were on notice that he did not agree to that settlement agreement. So it was before the 30 days that appellees were aware that he did not agree to that settlement agreement. You say they were on notice that he did not agree? He never signed it. Well, did he tell them he wasn't signing it? I'm not exactly sure of the timing. I know that he notified his counsel within a week or two of the mediation that... Again, we don't know, because there's no record on any of this. It's not on the record. Yes. Because there was never a hearing on any of it. Correct. If the Court doesn't have any further questions, I'd like to reserve my remaining time for rebuttal. Thank you. May it please the Court, Donita James on behalf of the City of San Luis, its Council and Fire Department. And Ms. Kimberly Fitika represents the Fire Chief, Mr. Luna, and his wife. And our plan is for me to do the argument, but if there are any questions specific to I'd like to emphasize how very narrow the issues are in this Court with respect to this case. The question, I wasn't sure until this morning whether we were going to have an argument about whether there was indeed a settlement agreement reached at the mediation, but apparently that's not in dispute, and so there's no challenge to that factual finding by the Court. And I appreciate that Ms. Leach admitted that because it would be very difficult to challenge that when lawyers for all three parties represented to the Court that there was indeed a settlement, that it occurred at a mediation, and that Mr. Camacho affirmatively expressed his assent at the mediation. But what about the ADA context? That does change things, doesn't it? Well, the 21-day aspect of the ADA is clearly waivable. A party who enters into an agreement and decides to waive that 21-day period doesn't have, I mean, you don't have to take the full 21 days. We don't even have the documents, though, so we don't know. Did he waive it? We don't know. But, well, then the question is, does it have to be in writing? Does it have to be a signed, written agreement? And the case law is unanimous that you can enter into a binding agreement without it being in writing. But what about in the ADA context? I mean, the whole thing becomes a nonentity, the 21 days, if it is waived simply by saying, I agree. Well, in the ADE, first of all, none of this has been briefed in this case. Of course it hasn't. But that's because there was never a hearing in the district court on any of this in which Mr. Camacho had a lawyer representing him. Well, Mr. Camacho did have a lawyer representing him at that telephonic conference. There was a motion to withdraw a file. But he didn't fire him. He didn't report to be representing him. I mean, he was basically saying, my client says there wasn't agreement. And he didn't. And he had already been discharged. Correct. But he had not been excused by the court or permitted to withdraw. And so for the court's purposes, he was representing Mr. Camacho at that hearing and was obligated to represent him. And the denial of the motion to withdraw was not appealed. So that's really not an issue in front of this court. Going back to the Older Workers Benefit Protection Act and the ADEA issues, those come up in a later challenge to the validity of the release. It's not some kind of prophylactic measure that the court is enforcing to make sure that when the parties settle their claims, they dot all the I's and cross all the T's. That may come up when there is a challenge later on to the settlement. Another context in which it could possibly come up is outside the litigation context. But many courts have held that those protections don't even apply when the case is in litigation. It's only when you're seeking a waiver outside of a litigation context. And so really, this case, we've cited in our briefs the Caconan case and the issues about whether a court retains jurisdiction to decide such things as whether there was a fraud in the inducement or whether a settlement agreement was reached. And in this case, the district court elected not to do that. And so really, what this appeal is about is whether it's an abuse of discretion for a district judge to decide not to retain jurisdiction to dig into these issues of breach and fraudulent inducement when all the parties before him state that there is a settlement and the court believes that, has every reason to believe, supported by the record, that the settlement is complete and definitive and whatever dispute the court may learn about it before the case is dismissed, does that mean that if the court learns there's a dispute, then the court must reopen the case, retain jurisdiction, conduct evidentiary hearings, somehow plow into these issues that are post-settlement. And there is nothing, no case law to support that, no authority to support that. And I would, the record is very small in this case. It's only like a couple of one-page notices and a short transcript of a telephonic hearing. And I would commend that transcript to the court because I think it's very indicative of a district judge doing everything we could expect of him in the proper exercise of his discretion. He had a notice of settlement filed that was unequivocal. He reports that he was very careful about what order he entered in the face of that. It wasn't a notice that said, we're talking about things, we think we're close to a settlement, we think we have a deal, but we have to dot all the i's and cross the t's. And instead, it was a definitive settlement. And so he entered the order he enters in that circumstance that says, okay, case over, and I'll give you 30 days to prepare the stipulation that you indicated you wanted to prepare. And then when he gets something that seems somewhat inconsistent, he waits to see what happens next. Then the notice of withdrawal, the motion to withdraw comes in, and it repeats the fact that there is a settlement. He calls counsel for all the parties together and finds out at a telephonic hearing that there was a mediation, which gives all kinds of assurances that the settlement was knowing and voluntary and not in any way coercive. And that satisfies whatever duty he may have under the civil rights statutes to make sure that the settlement was knowing and voluntary. And at that point, with everything else the Federal courts have to do, it was certainly within his discretion to say, okay, I'm done with this. Whatever dispute you have, you can deal with it in a subsequent proceeding in State court where it belongs. If the Court has no further questions of me. One question is, the district court said he understood that the representation to him was, we only send out that kind of an order when it's been represented to her that there has been a written enforceable agreement. Is there a written enforceable agreement? Well, Your Honor, there is no agreement in the record. What is in the record is the transcript of that telephonic hearing where the attorneys for all parties told the court. All said there was an agreement, but nobody ever said there was a written signed agreement. No. They told the Court about the mediation, about the way the mediator in that case had documented the settlement by dictating it into a tape recorder. And Mr. Camacho had also spoken into that tape recorder his agreement to the terms that the mediator had dictated. Now, so there's a tape recording. Is that the equivalent of a writing? You know, I can, it's not in the record whether it was typed up. The Court didn't ask if it had been typed up. Okay. Thank you. You have a minute left. Thank you, Your Honors. I just want to very quickly address two issues that she raised. One is that Mr. Camacho was not properly represented at that telephonic hearing. Both the Court and the appellees were on notice that Mr. Camacho had terminated his attorney at that point in time. Are you talking about the second time around or the first time around? The telephonic hearing regarding the settlement agreement. So the second time around. They knew that he did not, he lacked any authority to speak on Mr. Camacho's behalf. The second issue is regarding the fact that appellees argue their, or structure their argument regarding a post-settlement discussion. And I don't think that's the issue. It's really not a post-settlement issue. There was no motion to enforce a settlement, no motion to set aside a settlement agreement. You haven't disputed the fact that a settlement was reached initially, right? Correct. So how can you say there's no post-settlement dispute? Well, first I think the settlement is invalid because it was procured by fraud. And so that goes to the very core of the agreement. And whether it was valid in the first place. And then second, the issue is that he on a, the court had noticed prior to any execution of settlement or prior to dismissing the case that he rejected the settlement, that he no longer believed that the settlement agreement was valid. Thank you, Your Honor. Thank you. The case just argued is submitted for decision. The next case.
judges: Shadur, Schroeder, Berzon